The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw a line and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Alright, be seated please. Alright, first case we'll hear this morning is South Carolina State Conference of the NAACP, NAACP v. Weaver. And Mr. McClaren will hear from him. Good morning, Your Honors. May it please the Court. Charles McClaren for the Plaintiffs. This is a case about state politicians and state lawmakers injecting their preferred viewpoints into K-12 classrooms and prohibiting opposing viewpoints that they disagree with. So counsel, for today's purposes, we're just dealing with stamping. That's absolutely right, Your Honor. This is a narrow appeal on the dismissal of a 12b-1. The defendants are wielding the budget proviso to censor coursework, instruction, and books that address disfavored aspects of race and racism. And by doing that, they're depriving students access to facts, information, and ideas essential to their understanding of their own history. The District Court's dismissal order on standing grounds should be reversed for two independent reasons. First, the District Court was factually incorrect when it characterized the defendants' alternative justifications as unchallenged. That couldn't be any farther from the truth, as the plaintiffs have challenged the defendants' alternative justifications as pretextual and not credible. Second, the District Court improperly folded merits considerations about the defendants' motives into the court's standing inquiry and resolved factual disputes in the defendants' favor. So I'd like to start today with a discussion of the plaintiff's First Amendment claims and then proceed to the Fourteenth Amendment claims, but I'd be happy to take things in a different order if the court so wishes. Let me ask you about a couple of the specific plaintiffs. First, J.S. And as I recall, her claim to standing is based on her mother attempting to enroll her in the course. Has she graduated? She has not, Your Honor. She's still enrolled in a public high school in South Carolina. She's actually a current senior. So when will she graduate? She is expected to graduate in a few weeks, at which point there is a possibility that her claims may be mooted out. But I would like to point the court to student plaintiff A.G., who is a current sophomore, and A.G. actually enrolled in the course, and the District Court was correct when it recognized this, that A.G. enrolled in the course. He was then ejected from the course as a direct result of Defendant Weaver's removal of the course code, and that alone. Okay, but A.G. is not an individual plaintiff. Well, A.G. is a student member of an individual plaintiff, the South Carolina NAACP, and through A.G. So that alone satisfies the injury part. Let me direct my questions. So can you, as far as J.S. is concerned, can you make representation to the court in a 28J letter as to her date of graduation? Yes, yes, we can do that. Okay, so let's move on to A.G. Well, just on that, wouldn't it be she can't take another course at this point, can she? She's finishing. Whether we have the actual date, the date would be nice, but her circumstances are done, right? That might be the case, Your Honor. She can't enroll in the course now. Well, I think that that is sort of an unfortunate consequence of the fact that we're talking about factually now. That might be factually correct, Your Honor, just given that we filed this lawsuit, I think, about a year and a half ago, a few months after the defendant removed the course code, and at that point she could have been able to sort of take the course, have the district court granted the plaintiff's injunctive request, but that request was denied. So at this point, like Your Honor mentioned earlier, she is scheduled to graduate in a couple of weeks. But with student A.G., student A.G.'s facts— All right, let me go back to reframe the question as to the NAACP, because that's representational standing. So if we just assume that the individual plaintiffs either don't meet the Lujan test or if, as to J.S., it's mooted, then the remaining plaintiff for standing purposes is the NAACP, which would be a representational plaintiff. So in that case, it would have to have a member, A.G., who we'll assume has standing. She was enrolled in the course, and then the course was canceled. The district court, however, didn't make a finding. It only assumed that she had standing. And I don't see in the pleading or in the district court's decision that it ever made findings as to the elements, the other elements of representational standing. Is it germane to the organization's purposes? And does it require A.G.'s individual participation? That may be correct, but I don't think on this record at this time any of those findings were made. Is that correct? I think that's right, Your Honor, because the organization is pursuing an associational standing. Claimants is not an organizational standing. So the standing is buttressed by the facts of its individual members, student members, A.G. And if I can just sort of make one correction to Your Honor's point earlier, there is another student, T.R., who independently also satisfies the injury and fact prong of Article III standing. I premise my question just on if we assume the others do not meet the requirements, not that there's a finding, but if we were to conclude that the only plaintiff left standing is the NAACP, then at this point we don't have findings on the record that establishes its representational standing. So in order to do that, wouldn't it have to go back to the district court to make those findings in the first place? Well, that is correct. We don't have findings on the record yet. The dismissal, to be candid, the order itself is not exactly a model of clarity. No argument there. Yeah. In one fell swoop dismisses the plaintiff's 96-page complaint without even a mention to the plaintiff's 14th Amendment claims, for example. Had the district court properly analyzed the equal protection claims, for example, it would have been forced to allow that claim to proceed to discovery. Last question for a while, because your statement reminded me. If we were to determine that there was no standing as to Counts 1 and 2, am I correct? The district court did not make a specific finding as to Counts 3 and 4, and so it would have to go back to the district court to make those findings on those claims in the first instance. Well, I think with respect to standing, I think this court is empowered to make a finding on those claims. Right, but we usually don't. If the district court didn't pass on it, and it doesn't look like to me that they did. If you think they did, please tell us. If they didn't, normally what we would do is just send it back to the district court and say, you didn't make this determination earlier, make it now. A couple of points. I don't think that that would be the optimal solution here. I just think that in the interest of judicial economy and efficiency . . . Supreme Court's made pretty clear while our role is distinct from the district court's role, and the district court, we rely on to make findings, even if they're just findings with respect to different affidavits and conflicting affidavits. We could do the same thing, but I think it's pointed out pretty clearly that that's not our role, too. Maybe in an exceptional circumstance, I'm not sure what the rule is on the exceptional circumstance, but generally that's not our role to find facts and to sort them out and to comb the record and determine what supports it or not. Yeah, well I think this sort of harkens back to my conversation just a minute ago about the lack of clarity of the district court's order. It's not clear if the redressability analysis is exclusive to the First Amendment claim, or if it applies to the other claims, right? At which point, the redressability analysis applies to all of the claims. Then, for example, that would sort of give this court the jurisdiction to sort of weigh in and to assess whether or not the plaintiffs have sufficient Article III standing for the 14th Amendment claims. What happens if we can't tell? Well, I think that, again, even if this court was not sure, I think the optimal sort of solution would be to sort of rule on the 12B1 dismissal, which means if the court does not, or if the court did not, that would sort of leave open the possibility of endless appeals. We think a ruling here would obviate the necessity of additional appeals, which could take years on the 12B1. I think, again, at which point the court does think that the redressability analysis was not limited to the First Amendment claim and applies to the 14th Amendment claims. I do think that this court has jurisdiction to rule on the 12B1. These aren't findings of facts. These are essentially legal questions as to whether or not the plaintiffs have suffered a concrete, particularized injury that a favorable court order could remedy. I do think that this court does have jurisdiction, and I do think that we're properly before this court on all of the claims. And if I can just quickly go back to the student's injury, the fact that AG was enrolled in the course and then subsequently enrolled in the course, that alone satisfies the injury prong, and there's no need for this court to even consider whether or not the other students were injured for the same claim. It's a pretty straightforward injury for a First Amendment claim. But she's not an individual plaintiff. You've got at least two individual plaintiffs, but she's only here. Tell me if I'm wrong about this. She's only here as a member of the NAACP. She's not making a claim in her own right. Well, that's correct. So the South Carolina NAACP, they are a plaintiff, and the fact that one of the plaintiffs has a pretty straightforward injury under Article III, that alone satisfies Article III injury for this claim. So there's no need for the court to assess whether or not the other plaintiffs have an Article III injury for the same claim. And this court has been pretty clear on that, that that sort of is the standard. So just for example, in Rumsfeld's form for academics and institutional rights, the court made pretty clear that the presence of one party withstanding is sufficient to satisfy Article III, and there's no need for the court to consider whether the other students or the other plaintiffs are standing for that same claim. Based on the declarations, A.G. is currently a sophomore or junior in high school? Correct. A.G. is currently a sophomore. Correct. And then Dr. Kendi's injuries are also pretty straightforward because he alleges that the school district defendant removed his book stamped from the library because of the budget proviso's prohibition against the viewpoints within the book stamped. So under this court's precedent, this type of censorship, namely viewpoint discrimination, is sufficient to satisfy the injury in fact prong. If I can turn to the addressability prong, the state concluded that the AP course violates the budget proviso and defendant Weaver's enforcement of the budget proviso now stands as the primary barrier to the students being able to achieve their desired result. It's worth underscoring that the social studies state standards is still pending and defendant Weaver is assuming the outcome of that process. There is nothing in the record that even remotely suggests that the soon to be revised standards will be found to be inconsistent with the course. And as described in the complaint, the state didn't even evaluate Would that be a merits consideration? In other words, you wouldn't get to that on standing? I totally agree, Your Honor, but the problem is that the district court did get to it and the district court essentially made a determination that these standards actually stands in the way and serves as a barrier. So essentially the district court erred when it presumed that these disputed So you're not to make the argument for you, but I assume you would say in this regard that's a 12B6 argument. The district court didn't make the 12B6 decision. Well, what the district court did was the district court folded or collapsed these merits considerations into its standing inquiry and that is an obvious no-no because it literally turns the redressability doctrine on its head and it unnecessarily and improperly incorporates these merits considerations into a threshold standing inquiry. The plaintiffs actually provided examples of how the course is actually harmonious with the current standards. So there's no reason to think that the outcome of this process will result in a conclusion that the course is not compatible with the standards. And on the redressability, I think the main point here is that a declaratory judgment would in fact make it more likely that the plaintiffs will be provided redress. In other words, it would be more likely that the course code would be reinstated and that they'll have an opportunity to take the course. And that's certainly a sufficient tangible benefit that's enough for standing. As we described in our briefs, this court has repeatedly recognized that redressability doesn't turn on whether a favorable decision would eliminate every single conceivable obstacle that's out there. Article III only requires that the plaintiffs put forth plausible allegations that they would benefit in a tangible way from a favorable court order. And declaring the proviso unconstitutional would remedy the plaintiff's injury because at that point the defendant, Weaver, would no longer be able to point to the budget proviso as a justification for removing the course and would no longer be able to point to the budget proviso as an obstacle that sort of stands in the way. Dr. Kendi's redressability analysis is pretty similar because, again, the mere possibility that a favorable court order would not return stamps to circulation, that doesn't defeat standing because he doesn't have to show that a favorable court order would guarantee that outcome. Again, similar to the student plaintiff's argument, the proviso, if the proviso was declared unconstitutional, the school district defendant would no longer be able to point to the proviso as a justification for keeping his book off the shelf and the proviso would no longer operate as an unconstitutional barrier to his ability to disseminate his speech freely without impermissible viewpoint discrimination. So in dismissing Dr. Kendi's claim, the district court relied heavily on the school district's assertions that the book is replete with factual inaccuracies and it pulled the book because of these purported factual inaccuracies according to documentation in the record. But that conclusion, again, improperly relied on disputed facts. The defendant's factual assertions that other considerations may have informed the committee is totally irrelevant to resolving a motion to dismiss because factual disputes about the defendant's motives lie at the very heart of the merits case here. Why the defendant did what they did . . . That's always the most difficult part of these cases because a 12B1 motion is within the full scope of the district court and it can make findings of fact, but 12B6 facts impinge on trial rights and jury rights and when they overlap, that's a difficult sorting out to do. It seems to me the district court could sort them out, but it's always easy to say that a standing fact also implicates a merits fact. It gets very close. It does, Your Honor, and to that point, at which point there's this intertwining between the standing facts and the merit facts, this court has said at that point the district court is to assume jurisdiction and then proceed to the 12B6 analysis, not to just sort of dismiss the case in one fell swoop without getting to those facts. If I could just add one point of clarification, one correction, Your Honor, is that some of these facts are jurisdictional facts. Some of these facts are sort of merits facts. I think that at which point that the facts are jurisdictional facts, then yes, those facts can be resolved even at the 12B1 posture, but if they're merits facts like why the defendant did what they did, why the defendant pulled the course from the shelf, why did the defendant decertify the AP African American Studies course, questions about intent, those are purely— Those probably are not necessary for deciding standing. All right. You had some rebuttal. We'll hear from you on rebuttal. Great. So unless there are any further questions, I'll—  Thank you, Your Honor. Good morning. May it please the court. Miles Coleman, I represent both of the defendant's respondents in this case. This court should affirm the ruling below for either one of two reasons. First, the district court correctly concluded that the defendant's actions challenged in this lawsuit rested on two independent concurrent justifications, and the plaintiffs only challenged one of them. Second, more broadly, the plaintiffs have even more fundamental standing problems, and Judge Agee, this goes to some of the questions you were asking, which I'd be happy to engage with as well in my time. Let me start with the first and simpler question that's before the court. It's a question of redressability, merely one prong of the standing analysis. Again, each of the two challenged actions, one, the removal of the AP AAS course code, and secondly, Lexington Three School District's removal of Book Stamp, each of those rested on two separate independent sufficient justifications, and plaintiffs have only challenged one of them, the budget proviso. Even if Judge Leidenblow, even if this court were to agree with the plaintiffs and grant relief on the budget proviso, that doesn't change the fact that an independent concurrent sufficient justification still exists that would lead to the same outcome, that would lead to the same result. How does that square with the Supreme Court's decision on Gutierrez? In Gutierrez and Long, and in other cases that discuss what I'm phrasing, the one obstacle theory, the removal of one obstacle being sufficient to provide redressability, in each of those cases, the obstacles were sequential. They involved future, in some cases, potential, unknown challenges that could arise. They're thinking that, well, if we eliminate one obstacle, the agency, the government, could raise another one. In that case, sure, we can see how eliminating one gets you a little closer to control. The plaintiffs here also say that the second reason, that there's a pedological reason, that there's a review committee, that none of those actions had been completed at the time of the decision, and they represented here today. They're still not complete. It seems like that's a contested assertion. If that's not resolved definitively, and that there's no contest as to that, for standing purposes, how can we consider that? Your Honor, I don't think there's a dispute that, in the case of the AP, African American Studies class, that the recurring, periodic review of the social study standards is still ongoing, but that doesn't change the fact that's relevant here, which is the plaintiffs, in their complaint, didn't challenge that basis. They never asserted that it was legal. Why would they need to? They say it's pretext. They say that it's not accurate. What else would they need to say? Your Honor, in the complaint, they didn't say those things. Nowhere in the complaint do plaintiffs allege that that justification was pretextual, a sham, was a cover-up, was legally wrongful. They don't need to say it in the complaint. I mean, the whole record, this is a large record, and the court can consider the whole record on the motion, on 12B1 motion. It can, Your Honor, but even so, their standing has to be, Lujan, right, and numerous other cases, standing is determined from the pleadings of the complaint, and if they haven't challenged one of these bases, it's not— My point is they're not restricted to the complaint. As a matter of fact, it is—one of the parties talked about this being a facial challenge, which is totally silly because a facial challenge is a misnomer, but a facial challenge is a challenge where you rely on the complaint itself for lack of jurisdiction. Somebody didn't allege diversity or somebody failed to allege the membership of an LLC or something like that. On the face of the complaint, that has to be dismissed. That's a facial challenge, but when you go and look at affidavits and documents and depositions and conflicting affidavits, so long as it's not a merits act, the district court can resolve all those facts and decide the standing issue, and so the complaint can be totally disregarded. It could be totally compromised by affidavits of the parties. Whether there are a dozen affidavits in this case, back and forth, back and forth, the district court's allowed to sort those out on a 12b-6. Not only—that's the tough part that I just took up with your colleague, is that some of these facts may be relevant to the merits, and a preliminary decision cannot preempt those facts. That's right, Your Honor, and it may be helpful. I can point you to a case—two cases, in fact, from this court. As is sometimes the case, these are cases we didn't cite in our briefing, and I've uncovered them preparing for the argument, but that I think are relevant to that question and to the question before the court of addressability. The first is Covenant Media of South Carolina v. City of Charleston. It's a Fourth Circuit case from 2007. Like this case, it's a First Amendment case. Like this case, there were multiple concurrent bases for the governmental entity's decision, and like this case, the plaintiff didn't challenge all of them. So is this a standing decision you're citing to us, or a 12b-6? It was a standing decision, Your Honor. And it obviously preceded Gutierrez. It did. With respect, Your Honor, that would make no difference, because, again, Gutierrez, Long, and the one obstacle cases involved sequential, multiple challenges. You get over one, maybe there will be another one. But this case, just like Covenant, and unlike Gutierrez, doesn't involve multiple sequential future hypothetical potential challenges. It's simultaneous, independent, concurrent bases. Unlike in Gutierrez or Long, we don't have to wonder, if we eliminate one obstacle, would another one arise? Would it stop the plaintiff's desired relief? So, but why isn't this, other reasons, there's a pedagogical basis to remove the course or to remove the book. Why isn't that a 12b-6 determination, and not a standing determination? Well, it goes to standing, Your Honor, obviously because of redressability. That even if the relief sought, regarding the budget provides that were granted, this independent, unchallenged justification exists. So, I think it could go to both. But I think it has relevance to the standing analysis as well. Well, if we conclude that that is a challenged basis, what would you do with it at that point? The district court was wrong that it said it was not challenged. If, without conceding, but if you were to conclude that it were challenged, then I think the appropriate remedy, as it seems the court has already intimated, would be to remand for Judge Lyden to consider the other arguments at the motion-dismissed stage that haven't been ruled on yet. We cite a number of cases in our briefing in support of that proposition. Well, I take it you agree with counsel. The only thing we're dealing with here today is standing. That's right, Your Honor. Okay. That's right. And I agree with that. And, of course, standing includes a number of different elements to it. One that we haven't mentioned yet is there can be no standing, at least for the student plaintiffs, without concluding that they have a constitutional right to receive information. That's what the First Amendment claims rely on. And if there is no such right, it's not just that they don't have standing. For standing purposes, isn't the court, if it's well pleaded and it's not clearly frivolous, aren't they to assume that at the standing stage? So, to be clear— They've asserted the right. And then the court could very well make that determination at 12b-6, but why is it entitled to make that determination at 12b-1 or 2? Well, Your Honor, the Supreme Court in McConnell v. FEC did just that. Found that the asserted right on which the claim was founded didn't exist, and on a standing basis then. Because if there is no legally cognizable right, there can be no deprivation of the right. There's no deprivation. There can be no injury. No injury. No standing. So I think if there is no cognizable right on which the claim is founded, you can think of it in terms of standing. Other courts have thought of it in terms of subject matter jurisdiction, 12b-1. But it's not just that these plaintiffs under these facts don't have standing. If there's no cognizable right, no plaintiff could have standing. So that's an additional basis raised below. Judge Lyman didn't rely on it, but this court, of course, could to affirm the decision below. All right. Well, let me ask you as to Student AG. If Student AG was a plaintiff in his or her own right, would you agree that that student has standing? I would not, Your Honor. Why not? If we focus particularly, correct me if I'm wrong, I think particularly what you're thinking of is the injury prong of the standing analysis. AG gets closer but not close enough, and here's why. AG is a student in a school district that even without the AP class still offers this content as an honors class. It's still available to AG, just not under the AP designation. Now, plaintiffs contest that as not being a factual equivalent, which may or may not be true. But again, why is that a standing decision instead of a 12b-6 decision? Because if there's no injury, right, if the plaintiff still has access to the content that they claim to see, then they haven't been injured, and that's, of course, a standing analysis. Counselor, are you arguing that that's the equivalent? The newly-baked honors program is the same as the AP? There's a few points in response, Your Honor. The honors class wasn't a – I hesitate because I don't want to overstate from the record. I think it's safe to say the honors class was not newly made to compensate. I think it preexisted. This AP class is actually quite recent. You think it is? Again, these facts are always swirling about. Does it exist now? It doesn't, right? The honors program you're talking about. The honors program does. Okay. It's offered in that school district. And it's offered. It is. And you're saying it's the equivalent? Right. How could it be? Isn't that the argument saying it was made in Sweatt, Painter, and McLaurin, those cases that they're saying, well, it's a law school for black people and we just started it. And the Supreme Court made it clear it's not the equivalent. In terms of AP has a lot of gravitas to it, doesn't it? It comes with a lot of honors and prestige, right? AP class, right? I mean, I'm not putting you in the shoes, but as a parent, I mean, I know about AP classes. You get credit in college and those kind of things. It comes with a lot of gravitas for a student. So how could that be equivalent? And if it is, that's a factual question, isn't it? So a few points in response, Your Honor. There could be factual questions, but we don't even need to get to those today. Because the premise of the question shifts the alleged right, the alleged injury, from what's actually pled. Because what's pled is an alleged right to receive content, certain information. But the argument that the other side has made and that you're asking about actually shifts what's being alleged as the right. It's no longer the right to receive the content, the information, which is available. Now it's become an alleged constitutional right to get a potential higher GPA that's available in an AP class. Or the right, perhaps, to take the AP exam, which, incidentally, they can. Students in the honors class can still take the AP exam. They can still get the same college credit. All that's in the record. So really, at that point, what's left— So we're going to accept that as true at this stage for standing? Everything you said is in the record. That means true? It means for this stage we'll accept it as true. If the district court found it as true. District court's allowed to make that finding a fact. And if the court didn't make it, then we should give it a chance to make it. But these are facts if it's with respect to standing. I understood the claim to be the loss of content, not the deprivation of the value of the AP versus honors. I agree on that point, Your Honor. And perhaps I wasn't as clear as I could have been. I don't disagree with anything you just said. I guess what I was trying to say was a different variation on that, which is even without a finding of fact below, even without a factual conclusion, even if we assume the allegations of the complaint to be true, we would still get to the same place. Because the allegations of the complaint and the materials expressly cited in it demonstrate to us, they say we'll take it as true that these students in the honors class can take the AP exam, that they can get the college credit for it. Even if there were a constitutional right to take an AP class, which there's not, but even if there were, they're getting the same benefits. But then we're making the finding in the first instance that there's this equivalence. I just don't think we can do that. The district court hadn't done it. Your Honor, I don't think you need to make that finding. Again, I think we can look merely at what's the alleged deprivation, even assuming that there's a cognizable right, what's the alleged deprivation? Access to the content. What do the plaintiffs still have access to? That content, A.G. and J.S. That's right, Your Honor. If they still have access to it, they're not injured, they're not injured, they have no standing. Again, that's aside from the redressability question that Judge Leiden relied on below. Before I want to move on and mention a few other things and respond to a few other questions, but one final comment. Judge A.G., you, I think, drilled down a bit on the NAACP as an organization, its ability to assert claims on behalf of its members. I would just point out, in the complaint itself, the only thing that's alleged, and this is an amended complaint, mind you. They had a second chance to beef it up. In the amended complaint, the only thing alleged on behalf of the NAACP is that it has unidentified student members who are now unable to take the class. It's not until we get outside of the complaint, as we've discussed, that we get some declarations saying that there's one student, A.G., I think, who it intended to. But again, in her school district, still has access to that content. Let's pivot, if we can, briefly to Plaintiff Kendi. Ibram Kendi, we haven't talked about him yet. The same redressability issue there, now we're moving to the library aspect of the case, his book being removed from the library. He's got the same redressability problem and, more broadly, some of the same or similar standing problems. The removal of his book was expressly justified. We don't have to wonder. We don't have to speculate about what the motivations were of the committee that recommended the removal of his book. They told us right there on the record. It was because of factual errors and omissions. It wasn't due to viewpoint discriminatory reasons. It wasn't due to partisan bias. It wasn't due to the budget proviso. And even if it were, even if we assume that the budget proviso may have been in the back of their minds, they've given us an alternative, independent, concurrent, sufficient basis for the removal that hasn't been challenged. I thought somewhere argued, maybe it was in a declaration, that that basis was pretext. Your Honor, I don't want to overstate. I don't think that there was ever an allegation of pretext. Now, again, I don't want to say that too definitively because there were a dozen or so. But there were quite a few declarations. I don't believe it was challenged. I don't think it's necessary to make a finding of fact or to make a decision at this stage of whether it was a good faith motivation or not. He's got some other standing problems too. For one, that there's no constitutional right for an author to have his book placed into or retained in a public library or a public school library. He's got a problem too that he's alleged his injury has to do with the removal of his books and his viewpoints from the school library. But that's not true either. At all times, before, during, after, and still today, he has books about race and racism in America that are still in that library. He hasn't been discriminated against or excluded on the basis of his viewpoints because he's still there. He's still got those books. So that's the one book that found to be offensive to the proviso? Where is it? It was the one book that the review committee found contained numerous factual errors or omissions or distortions. Can you name one of the errors? I can, Your Honor. This may be going a bit out. It's going outside of the complaint. But you just brusque all these allegations. What was the error you wanted to address? In the book Stamps? Yeah. So, for example, and there's a number, but to give you a few, the book Stamps states that Ronald Reagan's economic policies caused an increase in the unemployment rate among African Americans. And that is factually, verifiably, empirically untrue. It states that the use of the term crack baby was coined. I can't remember who it says first used the term. But it was coined in an invidious, racist sense. And that, too, is empirically, verifiably not true. Your Honor, what's all that have to do with standing? The nexus to standing is that the review committee had and asserted a non-viewpoint discriminatory basis for its removal of that book, apart from the budget proviso. And the only relief— Well, again, why isn't that a 12B6 decision to be made? Why are you making that up? It just seems like to me the whole thing's got bollocks stuck between the standing inquiry and the failure to state a claim inquiry. Your Honor, I have three seconds left. If I can answer the question, I'm happy to answer any others. Yes, please, answer his question. Thank you. Now I've got to remember the question. I distracted myself. The relevance to the 12B1 inquiry is that the relief requested has to do only with the budget proviso. Even if the court were to grant that relief, it wouldn't change the outcome and it wouldn't redress the injury. Your Honor, I'm out of time. Thank you. Thank you. All right, Mr. McClellan. Your Honor, just a few broad bucket points. I just need to clear up some factual inaccuracies. First and foremost, the student plaintiffs have vehemently challenged the alternative justifications throughout this litigation. So, for example, they point to the fact that the sequencing and timing of the purported social study standards obstacle is inherently suspicious given that it's not expected to begin until the fall of 2025, which is a year and a half after the defendants pulled the course and the standards aren't expected to be implemented until 2027. That's three years after the removal decision was made. There's plenty of allegations in the complaint that sort of point out that that absurd time gap is in and of itself indicative of this being a pretextual justification that was just sort of thrown at the wall to defeat standing. So the notion that we have not challenged these alternative justifications is just not factual. That's the same mistake that the district court made and this court should not repeat that mistake. The same thing for Dr. Kendi. He has vehemently challenged the assertion that his book is replete with factual inaccuracies. So to say that we have not challenged that is just not true. That's been challenged ad nauseum throughout this litigation and it's been challenged in the briefing filed with this court, with the briefing filed with the district court. That's been sort of a theme, I might add, in the plaintiffs' pleadings. The second point is the notion that these purported obstacles are independent. That's also not true. In fact, the plaintiffs have argued that the social study standards story that's been put forth by the defendant is really part and parcel of the defendant's general scheme to suppress disfavored viewpoints in K-12 classrooms. It's really impossible for any court to disentangle that from the budget proviso. So the notion that these are independent barriers or independent obstacles, that's just not true. The next point I'd like to make is that… It's just not true. You mean factually not true or not theoretically a basis? In other words, it seems to me to prove redressability understanding if in fact it was found that the book was removed only because of its errors, not only, but it was removed because of its errors. It seems to me there'd be no redressability to give standing on that. Well, Your Honor, our point is that that's a disputed fact. Why the book was removed goes to its head. But that is something that the district court should have found if it didn't find implicitly. But it seems to me the court can fully understand its role on a 12b-1. It has to find facts. It has to decide whether it has the power to handle the case. And that's a pretty important requirement, a gate requirement under Steel Company. And so whether it did that adequately, we addressed originally during your argument, was maybe there's more to be done. Well, I see I'm out of time. If I can respond, Your Honor. Well, at the pleading stage, Your Honor… Well, it's more than a pleading stage. We're way beyond the pleading. We have, you know, when you file a motion in a court and you support it with documents and affidavits and argument, four hours of argument, 800 pages of record, this is not a pleading. This is a motion supported by evidence. And the court under a 12b-1 has to find facts to decide whether it has the power. The only catch, and it's a big catch, and that is when those facts overlap with the merits, 12b-6, then we have to be cautious not to preempt jury rights. Exactly right, Your Honor. And it is a big catch. And that's the catch that's at issue here because, again, so these questions as to why the committee removed the book, that goes to the defendant's intent, right? That's not a question that's amenable to resolution on a 12b-1. So, you know, I agree with you, Your Honor, that at which point that we're dealing with merits questions, not jurisdictional facts, the district court at that point was obligated to assume jurisdiction and then proceed to the 12b-6. So, unless there are any further questions, we'd ask the court to reverse this. Thank you. Are you going to send us a 28-J letter on student JS? Yes, we'd be happy to.  Thank you. Thank you, Your Honor. And copy the other side, of course. All right. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee